# United States Court of Appeals
## For the First Circuit

No. 08-2490

UNITED STATES OF AMERICA,

Appellee,

v.

EDDY ROA-MEDINA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Seth R. Aframe, Assistant United States Attorney, with whom John P. Kacavas, United States Attorney, Michael J. Gunnison, Acting United States Attorney, and Aixa Maldonado-Quiñones, Assistant United States Attorney, were on brief, for appellee.
Chauncy B. Wood, Wood & Nathanson LLP, for appellant.

June 2, 2010

**LIPEZ, Circuit Judge**.  The Sentencing Reform Act of 1984 ("Reform Act") authorizes the district courts to modify a term of imprisonment for a defendant who was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).  In this case, defendant Eddy Roa-Medina was originally sentenced to a statutory minimum term of imprisonment of 120 months for distributing cocaine base ("crack").  He was then given a reduced sentence pursuant to Federal Rule of Criminal Procedure 35(b), which authorizes a departure "below the minimum sentence established by statute" if the defendant provides "substantial assistance in investigating or prosecuting another person."  The U.S. Sentencing Commission subsequently amended the Sentencing Guideline applicable to crack offenders in an attempt to mitigate the disparity between crack cocaine sentences and powder cocaine sentences.

The question before us is whether Roa-Medina is eligible for a sentence modification under the Reform Act.  We conclude that he is not.

## I.

Roa-Medina pleaded guilty in 2006 to four counts of distributing controlled substances.  Among the counts of conviction were two counts of distributing fifty grams or more of crack, an offense punishable by a statutory minimum term of 120 months imprisonment.  See 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii).  At

-2-

the sentencing hearing, the district court determined that Roa-Medina was responsible for 213.46 grams of crack, a quantity that yielded a base offense level of 34 under the version of the Sentencing Guidelines Manual in effect at the time.[1] See U.S. Sentencing Guidelines Manual § 2D1.1(c)(3) (Mar. 2006). The court then reduced the base offense level to 31 to reflect Roa-Medina's acceptance of responsibility; determined that Roa-Medina had a criminal history category of I; and calculated an unrestricted guidelines range (i.e., one not taking into account the statutory limitations) of 108 to 135 months imprisonment based on those values. After accounting for the statutory minimum sentence, the district court determined that Roa-Medina was subject to a restricted guidelines range of 120 to 135 months. It sentenced Roa-Medina to the statutory minimum term of 120 months imprisonment.

Roa-Medina subsequently agreed to assist the government by testifying in a related criminal case. The government moved for a reduction of his sentence pursuant to Federal Rule of Criminal Procedure 35(b). The government recommended that the district court calculate the extent of the reduction by lowering Roa-Medina's offense level "from 31 to 26, which would result in a

---

[1] The district court also held Roa-Medina responsible for 18.43 grams of heroin, which required it to convert both drugs to their marijuana equivalents and then combine the two quantities. Because the quantity of heroin does not affect our analysis, we will refer solely to the quantity of cocaine base.

sentence range of 63 to 78 months," and reducing his sentence "from 120 months to 72 months, a 40% reduction." The district court granted the motion and adopted the government's proposed methodology. It declared that Roa-Medina's "offense level is reduced to 26" and determined that the "result[ing]" guidelines range was 63 to 78 months. The district court then imposed an amended sentence of 72 months imprisonment, which was 40% less than the original sentence.

Shortly thereafter, the U.S. Sentencing Commission issued a retroactive amendment to the Guidelines Manual aimed at mitigating the disparity between crack cocaine sentences and powder cocaine sentences. See USSG app. C, amend. 706, 713. Generally speaking, the amendment "adjust[ed] downward by two levels the base offense level ascribed to various quantities of crack cocaine" in the Guidelines Manual drug quantity table. United States v. Caraballo, 552 F.3d 6, 8 (1st Cir. 2008). If it had been in effect at the time of Roa-Medina's original sentencing and at the time of his Rule 35(b) hearing, the district court would have begun its calculations with a base offense level of 32 rather than 34. Roa-Medina attempted to take advantage of the change by filing a motion under 18 U.S.C. § 3582(c)(2), which allows the district courts to modify previously imposed sentences in certain situations to account for retroactive guidelines amendments. The district court denied the motion in a brief order, concluding that Roa-Medina did

-4-

not qualify for a sentence reduction because he "was subject to a 10 year mandatory minimum sentence." Roa-Medina now appeals from that decision.

## II.

As a general rule, the district courts may not modify a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). The general rule has exceptions, however. Of relevance here, the Reform Act provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . ., the court may reduce the term of imprisonment . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

A defendant may seek a sentence reduction under § 3582(c)(2) only if he meets a threshold eligibility requirement: he must have been "[1] sentenced to a term of imprisonment [2] based on a sentencing range [3] that has subsequently been lowered by the Sentencing Commission." The proposed reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission" -- most relevantly, section 1B1.10 of the Guidelines Manual.[2] The district court denied Roa-Medina's motion

---

[2] Pursuant to the authority granted in 28 U.S.C. § 994(u), the Sentencing Commission promulgated section 1B1.10 to "provide[] guidance and limitations for a court when considering a motion under 18 U.S.C. § 3582(c)(2)." USSG § 1B1.10 cmt. background.

-5-

for a sentence reduction on the ground that the threshold requirement was not satisfied. Roa-Medina's appeal from that decision raises a pure question of law, and our standard of review is de novo. United States v. Fanfan, 558 F.3d 105, 107 (1st Cir. 2009); Caraballo, 552 F.3d at 9.

Roa-Medina's argument is straightforward. He claims that his current 72-month term of imprisonment is "based on a sentencing range" that was lowered by the Sentencing Commission's amendment to the crack guideline. As he correctly points out, the district court arrived at the 72-month sentence by starting with a base offense level of 34; factoring in a three-level reduction for acceptance of responsibility and a five-level reduction for substantial assistance; cross-referencing the adjusted offense level of 26 with Roa-Medina's criminal history category of I; and then selecting a sentence within the resulting guidelines range of 63 to 78 months. If the amendment had been in effect when the government filed its Rule 35(b) motion, Roa-Medina argues, the

Although the key eligibility language in the policy statement varies slightly from the statutory language, compare 18 U.S.C. § 3582(c)(2) (referring to cases in which the defendant has been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered"), with USSG § 1B1.10(a)(1) (referring to cases in which the defendant "is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered"), we agree with the Tenth Circuit that, for all purposes relevant to this appeal, the two provisions are "identical" and "convey[] the same meaning." United States v. Darton, 595 F.3d 1191, 1194 (10th Cir. 2010) (quoting United States v. Dryden, 563 F.3d 1168, 1170-71 (10th Cir. 2009)).

district court would have started with an amended base offense level of 32 instead of 34.  After accounting for Roa-Medina's acceptance of responsibility and substantial assistance, the final offense level would have been 24 instead of 26, and the resulting guidelines range would have been significantly lower: 51 to 63 months.

The government counters that Roa-Medina's sentence is "based on" a statutory minimum rather than the Sentencing Guidelines.  On the government's theory, Roa-Medina is not eligible for a sentence reduction because the statutory minimum has not been "lowered by the Sentencing Commission."  18 U.S.C. § 3582(c)(2); see also United States v. Ganun, 547 F.3d 46, 47 (1st Cir. 2008) (per curiam) ("[T]he Sentencing Commission is without power to determine statutory minimums.").

## A.  "Based on a Sentencing Range"

Our first task is to determine what "sentencing range" Roa-Medina's term of imprisonment was "based on."  Roa-Medina argues that the sentence was based on the guidelines range that the district court announced at the Rule 35(b) hearing: 63 to 78 months.  That view finds some support in the case law. See, e.g., United States v. Blackwell, No. 05-66, 2009 U.S. Dist. LEXIS 51497, at *40-*41 (S.D. Ohio Feb. 13, 2009).

Ultimately, however, Roa-Medina's argument misunderstands the nature and effect of a substantial assistance departure.  The

-7-

three substantial assistance provisions -- USSG § 5K1.1, 18 U.S.C. § 3553(e), and Fed. R. Crim. P. 35(b)[3] -- do not authorize a district court to alter the applicable guidelines range. Rather, they permit the court to deviate from that range based on a specific factor (the defendant's cooperation) that was not accounted for in the basic guidelines calculation. Cf. USSG § 1B1.1 cmt. n.1(E) ("'Departure' means . . . imposition of a sentence outside the applicable guideline range or of a sentence that is otherwise different from the guideline sentence . . . .") (emphasis added).

All three provisions operate in conjunction with the Sentencing Guidelines. At the initial sentencing, the district court must calculate the applicable guidelines range before it may depart from that range based on the defendant's substantial assistance. See USSG § 1B1.1. The guidelines automatically account for statutory limitations at that stage, see United States v. Ahlers, 305 F.3d 54, 60-61 (1st Cir. 2002), yielding a "restricted" guidelines range that runs from the greater of the statutory minimum or the guidelines minimum to the lesser of the statutory maximum or the guidelines maximum. See, e.g., USSG

---

[3] We limit our discussion of Rule 35(b) to the version that was in effect when the district court reduced Roa-Medina's sentence. The rule has since been amended, and the effects of that amendment are slowly being explored. See, e.g., United States v. Poland, 562 F.3d 35 (1st Cir. 2009); United States v. Shelby, 584 F.3d 743 (7th Cir. 2009).

§ 5G1.1 cmt. ("If the applicable guideline range is 51-63 months and the maximum sentence authorized by statute for the offense of conviction is 60 months, the guideline range is restricted to 51-60 months . . . .").[4]  If the court determines that a departure from the restricted guidelines range is warranted, it takes the lower end of the range as its "starting point" and departs from that point as necessary to reflect the defendant's assistance.  United States v. Li, 206 F.3d 78, 89 (1st Cir. 2000); United States v. Auld, 321 F.3d 861, 867 (9th Cir. 2003).

A post-sentencing reduction under Rule 35(b) works similarly.  Like the provisions applicable at the initial sentencing, Rule 35(b) uses the original guidelines range as a frame of reference.  See Fed. R. Crim. P. 35(b)(1)(B) (2007) (permitting reduction only in "accord[ance] with the Sentencing Commission's guidelines and policy statements").  Where, as here, the defendant was originally sentenced at the bottom of the restricted guidelines range (the statutory minimum), the district court starts from that point and departs as necessary to reflect

---

[4]    If the unrestricted guidelines range falls entirely outside the statutory limits, the restricted guidelines "range" is a single point.  See USSG § 5G1.1(a)-(b); United States v. Li, 206 F.3d 78, 89 (1st Cir. 2000) ("Because [the unrestricted guidelines range of 15 to 21 months] is obviously lower than the applicable 36-month mandatory minimum, the court properly adjusted the guideline range to a 'range' of 36 to 36 months before applying any upward or downward departures.").

the defendant's assistance.  See <u>United States</u> v. <u>Donnell</u>, No. 02-37, 2008 WL 564647, at *1 n.1 (D. Me. Feb. 29, 2008).

As this brief overview suggests, sentences imposed pursuant to the substantial assistance provisions remain "based on" the original restricted guidelines range, which continues to serve as the anchor point for the ultimate sentence.  A number of circuits have reached that conclusion in the context of § 5K1.1 and § 3553(e), holding that the post-departure sentence is "based on" the pre-departure restricted guidelines range.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Carter</u>, 595 F.3d 575, 580-81 (5th Cir. 2010) (per curiam); <u>United States</u> v. <u>Byers</u>, 561 F.3d 825, 830-32 (8th Cir. 2009); <u>United States</u> v. <u>Williams</u>, 549 F.3d 1337, 1340-41 (11th Cir. 2008) (per curiam).  We now join the Seventh Circuit in holding that the same reasoning applies to sentences reduced under Rule 35(b) -- they remain "based on" the restricted guidelines range that applied at the initial sentencing.  <u>See</u> <u>United States</u> v. <u>Poole</u>, 550 F.3d 676, 678, 680 (7th Cir. 2008); <u>see</u> <u>also</u> <u>Byers</u>, 561 F.3d at 830-32 (holding that the relevant guidelines range for defendants who benefitted from all three substantial assistance provisions was the original restricted guidelines range).

It is true that district courts sometimes implement Rule 35(b) reductions by "lowering" the defendant's offense level and recalculating the guidelines range, as the district court did in this case.  But that method employs a fiction.  As a legal matter,

a district court may consider only the defendant's assistance in determining the extent of a Rule 35(b) reduction.  See Poland, 562 F.3d at 38, 40-41.  The "lowered" offense level is nothing more than a useful way of quantifying the defendant's assistance. Neither Rule 35(b) nor the Sentencing Guidelines specifies a method for calculating the extent of a substantial assistance departure, and the district courts in fact use a variety of methods, including percentage-based calculations and calculations based on an absolute number of months.  See United States v. Fennell, 592 F.3d 506, 510-11 (4th Cir. 2010); see also Bruce M. Selya & John C. Massaro, The Illustrative Role of Substantial Assistance Departures in Combatting Ultra-Uniformity, 35 B.C. L. Rev. 799, 829-30 (1994) (noting that sentencing courts "may," but "need not," refer to "the vertical axis of the sentencing grid as the base for making [substantial assistance] departures").

Other courts have held, and we agree, that a district court's "reference to offense levels in making its discretionary decision of how far to depart [does] not amount to the application of a 'sentencing range' authorized and made applicable by the Sentencing Guidelines and therefore [is] of no legal significance to the analysis under § 3582(c)(2)." United States v. Lindsey, 556 F.3d 238, 245-46 (4th Cir. 2009); United States v. Smiley, 356 F. App'x 302, 305-06 (11th Cir. 2009) (per curiam).  Cf. Caraballo, 552 F.3d at 9 (rejecting the argument that the district court's

"oblique reference to the crack cocaine guideline was enough to trigger section 3582(c)(2)"). The ultimate sentence remains "based on" the original restricted guidelines range.

Following that analysis, we conclude that Roa-Medina was sentenced to a term of imprisonment that was "based on a sentencing range" of 120 months (the statutory minimum) to 135 months (the guidelines maximum). As noted by the government at the Rule 35(b) hearing, the reduced sentence represented a 40% deviation from the bottom of that range.

## B. "That has Subsequently been Lowered by the Sentencing Commission"

The remaining question is whether Roa-Medina's sentencing range was "subsequently . . . lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). In making that inquiry, we must calculate "the amended guideline range that would have been applicable to the defendant if the [retroactive amendment] had been in effect at the time the defendant was sentenced[,] . . . leav[ing] all other guideline application decisions unaffected." USSG § 1B1.10(b)(1).

In this case, the crack amendment had no effect on the bottom of the restricted guidelines range (the statutory minimum), which was the legal "starting point" for Roa-Medina's substantial assistance reduction. It also had no effect on the value of Roa-Medina's cooperation, which was the only factor that could be considered in determining the "distance" of the reduction. In

-12-

other words, both of the factors critical to the sentencing outcome remained the same.  Roa-Medina's sentencing range has therefore not been "lowered" within the meaning of § 3582(c)(2).  As the policy statement puts it, the crack amendment did not "have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment)."  USSG § 1B1.10 cmt. n.1(A).  The district court properly denied Roa-Medina's § 3582(c)(2) motion.

**AFFIRMED**.